We penalize you for walking up to the podium. May it please the Court, Kelly Woodruff of Farrell, LeBron, and Martel, on behalf of Vincent Bruce, the appellant in this civil rights case. If I may, I'd like to reserve two minutes at the end of my time for rebuttal. As you know, we are here on an appeal of the District Court's erroneous granting of summary judgment in favor of the State on disputed facts. This case involves the arbitrary and capricious identification and validation of Mr. Bruce as a prison gang member based on insubstantial, flimsy, and outdated evidence in retaliation for his exercise of his constitutional rights to petition for grievances. Simply put, Vincent Bruce introduced sufficient evidence at the summary judgment stage to raise a triable issue of fact as to each of the key issues in this case. Summary judgment was and is improper on this record. Do you think your client could make out a case? Pardon me? Do you think your client could make out a case as opposed to the sanctity of the, I'll use that in quotes, of the prison maintaining prisoners where they think it's safest for them and being away from gangs that make up the prison population? I do, Your Honor, because to establish retaliation, Mr. Bruce needed only to establish that he had exercised a constitutional right, which the law is clear that the right to petition for grievances is a constitutional right, that a substantial or motivating factor for the government's action, validating him and investigating him as a gang member, was in retaliation for that, and that there was no valid penological instance. Did he get a hearing? He did not get a hearing before he was validated, no, Your Honor, he did not. He was given a hearing approximately two months after he was put into administrative segregation and approximately one month after the validation decision had been made. And you don't think the prison has a, not only a right, but a duty to protect all the other prisoners from gangs that are part of the prison population and they allege he was a gang member, gang, still a gang member? I concede, Your Honor, that the prison officials have both the right and the duty to investigate gang membership and to segregate dangerous prisoners from the rest of the population. Nevertheless, on the facts of this case, there was substantially insufficient evidence to validate Mr. Bruce as a gang member, and the evidence was overwhelmingly, at the very least it raised a tribal issue of fact as to the motivation for it. The investigation was initiated by the assistant IGI, the assistant gang investigator, Washington. He had prepared a written report four days before Mr. Bruce was notified that he was being investigated for a gang membership. Lieutenant Washington's report concluded, it did not say he was going to be investigated, it concluded that he was a black guerrilla family member four days prior to Mr. Bruce even being notified that an investigation was going to be initiated. That report was drafted and presented to the classification committee within days, within days of Mr. Bruce having successfully resolved some of his more serious inmate grievances, including the lack of proper clothing, underwear, and sanitation. That would get us to the First Amendment retaliation claim, I think. Correct. Is that right? And here you point out the short time interval between helping the people and some conversation with one of the guards about this was the last straw or something or other, and then doing and launching the investigation. But if we say that there was no due process violation in the investigation, the evidence was sufficient and the prison acted appropriately in classifying this person as a gang member, and it would be appropriate, if that were a proper procedure in classification, to put him in administrative segregation. Now, if the end result, segregating the gang member, is a proper penological purpose, does it matter that your client's First Amendment rights were violated, let's assume that, by a retaliatory investigation? Yes, Your Honor, it does. Explain that to me. Well, case law shows that it's, in fact, irrelevant whether or not he was ultimately validated as a gang member, assuming, which we do not concede, that he was properly validated on proper evidence and with all of his procedural protections. If we assume that that is the ultimate finding of this Court, that his due process rights were not validated, nevertheless, because the motivation for initiating the gang investigation on old and outdated, flimsy and previously rejected evidence, because the motivating factor for that was the exercise of his First Amendment rights, his retaliation claim stands. Okay, now, but what do we do? We don't let him out of administrative segregation, do we? Well, he is out of administrative segregation now. Not right now? No, he's already out. He is out. That is not part of the appeal because he was released after the district court granted summary judgment. So what are you after? He is after declaratory and injunctive relief as well as damages. He would like a declaration that the evidence that was relied upon is, in fact, unreliable, does not establish his gang membership. Isn't it moot? Is it hurting him at all at this point? It will hurt him because the prison procedures, inevitably, every time a prisoner is transferred to a new prison, he gets investigated for a gang affiliation again. But that's not punitive. That's administrative, and it's where somebody belongs. It's purely administrative. I concede that. But if an investigation is initiated and, in fact, he gets revalidated again based on these same three pieces of unreliable evidence, that's what he would like to protect himself. I have to tell you, it doesn't seem to me to be appropriate for us at all to try to tell the prison what they can or can't do in the future regarding validation. That's a bombshell, and it's for his benefit. It's for everybody else's that they make sure that they keep these gang members away from each other. As fast as they can, they kill each other when they get close to each other. So you're asking us to tell the prison system in the future how to handle validation of this guy? Well, Your Honor, what we would like is an injunction that says that, as a matter of due process, you cannot rely on unreliable information. The Due Process Clause, as well as case law, provides that. . . There's nothing that says this is unreliable information. It simply suggests, according to you, that it's not enough. But there's nothing that says it's unreliable. Although there was evidence in the record to, at the very least, raise tribal issues of fact as to whether or not the pieces of evidence were unreliable. And, of course, all three pieces of evidence supporting a gang validation must be reliable as a matter of constitutional due process. Also, I don't know of any judge who has the authority in a federal case to send somebody to a particular prison unless it's a mental or physical problem that they note as a matter of a hearing that they've held. But, barring that, when you sentence someone, it's the prison that decides, even if you recommend that a person go to X or Y institution. The people of the Bureau of Prisons, they make the final decision. And I don't think there's any appeal unless some person is physically hurt or some other kind of evidence is presented. Your Honor, that issue is not being raised before this Court or in Mr. Bruce's petition. No, I understand. He was assigned first to North Kern and then to Pelican Bay. In both cases, he was investigated for prison gang affiliation. In both cases, he was determined not to be a prison gang member. He was transferred to Salinas Valley where he was housed for more than two years without any alleged or purported or any indication of any gang affiliation. I don't want to be rude and interrupt you, but the point I'm making is that what do you want us to do? Do you want him to go back and have a full hearing? Maybe he didn't get a full hearing. Maybe he didn't get an opportunity to be heard as well as he would like to, but he's got certainly due process. And are you asking us now do we tell the prison where to place him? No, Your Honor. We absolutely are requesting that the summary judgment order be reversed, that Mr. Bruce be given a chance to present his evidence, get the discovery that he needs to establish the fact that the evidence was unreliable and that there was no valid penological interest in segregating him based on this outdated evidence, based on cases such as Hines and Koch. You have a minute and a half. Why don't you retain that for rebuttal? I would like to. And we'll hear from the other side. May it please the Court. I am Deputy Attorney General Anya Bensaka, representing defendants' accolades. Defendants want to emphasize two points today. First, the validation of Mr. Bruce as an affiliate of the Black Gorilla family was supported by some evidence, and Mr. Bruce received the procedural process he was due. And secondly, Mr. Bruce cannot raise a triable issue of fact on his retaliation claim. Because his validation was proper, it supported the legitimate penological interest. That's what I'm concerned about. Let's suppose everything was just dandy in the process and all the rest, but that he really was retaliated against. What provoked the investigation was that he was trying to help these other prisoners. And the prison says, by golly, we don't like jailhouse lawyers. We're going to investigate you. So they investigate him, and by golly, they turn up the fact that he's a gang member. And they stick him in administrative segregation. Now, let's suppose that the investigation was retaliatory and it was undertaken in violation of his First Amendment rights to speak out. Okay. Does the fact that the end result was appropriate, sticking him in ad seg, then wipe out, vitiate the constitutional violation? Yes, Your Honor, for two reasons. First, an independent element of the retaliation claim is that plaintiff has to plead and prove the defendant's actions did not advance a legitimate penological interest. That's the question. The word and appears in our cases, I think. Well, what penological interest does it advance if you start from the proposition that the entire purpose of the proceeding was to punish somebody, not really deal with whether he was a gang member or not? I mean, let's say Judge Thompson and I are the prison people. We get together and say, we don't like that prisoner. That SOB is filing all these complaints. I've got a great idea. Let's phony up a gang validation proceeding, find somebody who says he's a gang member, and then we'll put the SOB in solitary and let's see how many complaints he can file from there. Right. And then we do that. What possible legitimate penological purpose is there in that? There is no legitimate penological purpose. And that's exactly what he has pleaded here. Let me read this to you. Washington stated also to me, this is Washington being one of the prison people, quote, the higher-ups want you validated to make an example out of you to discourage similar complaints and protests. Then Washington stated, the bosses don't care for organized complaining. Washington further stated to me, your family filing a complaint to the warden wasn't a good idea either. This is exactly the sort of thing that pisses off the higher-ups. Washington then stated, the warden called me this morning asking me about your validation. Washington then frowned and shook his head slowly back and forth as if I was compounding my errors. I asked Washington what evidence was being used against me. He refused to say except to state it was already in your file when it was sent up to the office. So if you believe this, he's saying they told me we're going to abuse this validation process to punish you for exercising your rights. Defendants concede that plaintiff has raised a tribal issue of fact on the element of retaliatory motive. And they can get out from under it by putting the guy in solitary and saying, well, but solitary is really a legitimate penological purpose if it's done in order to crush the guy's rights? Only if the validation is supported by some evidence as it was here. If we follow plaintiff's It's a phony. He says it's a phony. They concocted this thing. They said go back and take the same evidence that was used before that didn't get you there, and now we're going to claim now it does. It's the same evidence, isn't it? And so he's made out a prima facie case, it seems to me, that they are abusing the validation process to shut him up and lock him in solitary. And that's why maybe it should get to another stage of the game, shouldn't it? I disagree, Your Honor. It's not clear, first of all, that the same evidence is being considered. The documentary evidence indicates that one gang investigator found two points towards validation that would have been acceptable, and the other one merely indicates that. Isn't that all trumped? I mean, if you believe this, as you must, you have to take this evidence at face value. He says the warden called and said, lock this guy up. We want him shut up. If you carry it. So then you find some little ticky-tacky things. Oh, well, guess what? One and two points. Ta-da. Now we have at least a facial justification for locking the prisoner up. If you carry that argument to its logical conclusion, what that would mean is that any time any prison official initiates an investigation for an improper motive, regardless of the evidence discovered, the prison would never be allowed to validate a prison gang member. And that cannot be the case. If there is sufficient evidence. We should write the opinion that way and say, however. But this case is different. You know, this may be B.S. about Washington. I don't know, but it's in here. And at this stage in the lawsuit, it would seem that you have to credit that and ask whether that lays out a case. And that deprives, if this is true, it seems to me to deprive what happened to him of any valid penilogical purpose, because the purpose of it was just to shut him up. And what would you suffer if he were heard? I'm sorry? What would the institution suffer if he had a hearing, a full hearing on this? Well, we do contend that he received the process he was due. He did have, he was told of the charges against him. He had a meeting before the official validation. I think we're asking what if he had a hearing on the retaliation. Yeah, before the court. Because the people that were doing the hearing are part of the institution. I see. So the question is. If we ask the neutral person to hear it, what do you suffer by it? We suffer because plaintiff has not raised a triable issue, a fact on the independent element of the legitimate penilogical interest. We concede that he has. But suppose we were to disagree with you on that. What would be the result, a remand for trial? Or subsequent summary judgment. The summary judgment filed in this case was an initial summary judgment motion. Washington may come in and say, I was in Cleveland for a year. I don't know what he's talking about. Exactly. There could be another summary judgment motion before trial. For further proceedings. Yes, Your Honor. If you agree that there is no legitimate penilogical interest. Assume that what he did, that what he says is correct. Is that something you want to defend? Use the validation procedure to shut up a prisoner who's filing grievances? No, Your Honor. There's no penilogical purpose in that, is there? Defendants concede that there is no penilogical interest in falsely validating members or invalidating them in retaliation for speaking out. That is not what defendants are arguing. Defendants argue that there is a legitimate penilogical interest in segregating this inmate because there's specific evidence that he was affiliated with the gang. Like Bobby Kennedy saying, I don't care what we get on Hoffa. If it has to be spitting on the sidewalk, go get the SOB. Bobby Kennedy may have had, you know, interesting motives. But the Supreme Court seems to have said, well, that's okay. If he spit on the sidewalk, lock him up. I guess it depends on what we view as the penilogical purpose that was in play here. Exactly. And I think it depends on what part of the process you look at. If you look at the initiation, then we're faced with the problem that any time there's some allegation of improper motive about the initiation of investigation, that prevents a legitimate investigation from occurring. No, it may run it to the summary judgment stage. Do you have any comments on this fellow's been out of administrative segregation now? He says he was retaliated against and they shouldn't have investigated him. Does he get damages of a dollar or something like that because they shouldn't have done it, but because he was a gang member he should have been in there anyway? Well, he is out of the security housing unit, not because his validation has been called into question. I understand that. I just wonder what kind of damages he got. Well, we could probably ask Ms. Woodruff about that. We would concede that he alleged that he is not entitled to damages, that the confinement was part of the normal course of prison. At best, nominal damages you might say. At best, Your Honor. A dollar with giant attorney's fees. But he was representing himself below. Is there no further questions? Thank you, Counsel. Thank you. I think we understand your retaliation claim. Okay. Thank you, Your Honor. I did want to just point out and to follow up on your questions, Judge Trott, that the some evidence standard, whether or not it applies, and the Ninth Circuit has yet to issue a single published opinion that the some evidence standard applies in the gang validation process to require only one piece of any type of evidence. So taking the hypothetical out to its furthest extreme, a gang investigator could say, gosh, I saw Mr. Bruce associating with a validated gang member, write a note, stick it in his C file, and then initiate a gang validation proceeding against him solely in retaliation for his exercise of his First Amendment rights, and then turn around and rely on that fake and phony piece of evidence because it is, quote, some evidence, notwithstanding that the entire motive of it was retaliatory and based on flimsy evidence. Sounds like the practice. But at the very least, there is a tribal issue of fact for which Mr. Bruce is entitled to a trial. As for the remedy, again, Mr. Bruce is adamant that he would like an injunction and declaratory release so that this same evidence cannot be continued to be used again. In addition, he was confined for three and a half years in the security housing unit, the SHU at Pelican Bay, which, as Your Honors are certainly aware, suggests. But if he was really a gang member, that's right where he should have been. But he contends that he was not a gang member, that there was insufficient evidence to validate him as a gang member. Suppose we say there was sufficient evidence to validate, then he was right where he should have been. If that turns out to be true, Your Honor, although there was, I would say, at the very least, a tribal issue of fact as to whether or not there was sufficient evidence to validate him as a gang member. All right, thank you. Thank you both. An interesting issue. The case just argued as ordered and submitted. We'll get you an opinion one way or the other. Taking us to Baird v. Kessler. If at any time you want to take a break.
judges: Judges Weiner, Thompson, Trott